IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | | |
|---|---|---|
| TRISHA HERBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:13-CV-00084-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.

Trisha Herber appeals the Commissioner's partially favorable decision denying in part her application for disability insurance benefits under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision is AFFIRMED.

## PRIOR PROCEEDINGS

Herber alleged disability beginning October 6, 2007, when she suffered a hemorrhagic stroke. Admin. R. 271-72. Herber alleged disability due to memory loss, limitations in executive functioning, depression, and difficulty concentrating and remembering instructions. Admin. R. 30, 161, 190, 208. After spending several weeks in hospitals, Herber was discharged and underwent

1 - OPINION AND ORDER

outpatient rehabilitation. Admin. R. 505, 525. Herber alleged that she could not perform her past work as an executive vice president or any other work due to the ongoing effects of her impairments.

The Administrative Law Judge ("ALJ") applied the five-step disability determination process outlined in 20 C.F.R. § 404.1520. Admin. R. 26-27. The ALJ determined that between October 6, 2007, and December 31, 2010, Herber was unable to work, primarily because she lacked the ability to perform simple, routine tasks with consistency. Admin. R. 30. Relying on the testimony of a vocational expert, the ALJ concluded that no jobs existed in the national economy that Herber could perform while she had that limitation. The ALJ therefore concluded that Herber was disabled for the purposes of the Social Security Act until December 31, 2010. Admin. R. 34.

The ALJ found that Herber's medical condition steadily improved and by January 1, 2011, she possessed the residual functional capacity ("RFC") to perform a range of medium work involving simple, routine tasks and limited interactions with others. Admin. R. 36. The vocational expert testified that a person with Herber's RFC could perform unskilled, light occupations such as courier and office helper which represented hundreds of thousands of jobs in the national economy. Admin. R. 87. Based on the vocational expert's testimony, the ALJ found that, by January 1, 2011, Herber was not disabled within the meaning of the Social Security Act. Admin. R. 40-41.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence may be less than a preponderance of the

evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Under this standard, the court must consider the record as a whole, and uphold the Commissioner's factual findings that are supported by inferences reasonably drawn from the evidence even if another interpretation also is rational. *Robbins*, 466 F.3d at 882; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.    Claims of Error

Herber claims the ALJ improperly found that her subjective statements lacked credibility and assigned insufficient weight to the opinion of examining physician Sharon Labs, Ph.D. Herber also contends the Appeals Council failed to account for evidence she produced after the ALJ's decision.

### II.    Credibility Determination

Herber alleged she could not work due to continued memory loss, depression, and limitations in executive functioning and concentration. She testified that she could not work on a full time basis because she would become tired and had poor memory, planning, and organizational skills. Admin. R. 37, 63.

The ALJ found that Herber's impairments could reasonably be expected to produce the symptoms she alleged but that she lacked credibility regarding the extent to which her symptoms continued to limit her after December 2010. Admin. R. 36-37. The ALJ accepted that Herber's ability to work continued to be affected by a cognitive disorder related to her subarachnoid hemorrhage and by an adjustment disorder. Admin. R. 29, 34. She discounted the credibility of Herber's claim that she could not work full time within the limitations of her RFC assessment. Admin. R. 36-37, 39.

An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficient to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti*, 533 F.3d at 1039.

The ALJ said that the treatment notes and Herber's activities showed that her health steadily improved and that, by January 2011, she was no longer as limited as she claimed. Admin. R. 37, 39. As the ALJ found, Herber's treatment notes during 2010 reflected steady improvement in Herber's physical, emotional, and psychological health. Admin. R. 37, 39, 669, 675, 828, 844, 850. By early 2010, clinical psychological findings by her primary care physician included normal concentration and attention, average memory testing, bright affect, good insight and judgment, linear and goal directed thought process, with only mild depression. Admin. R. 37, 39, 675-76.

In March 2010, a neuropsychological evaluation by Dr. Labs revealed that Herber maintained good intellectual functioning in the verbal domain, but had relative impairments in working memory, processing speed, and certain executive functions. In addition, Herber showed personality changes manifested in inappropriate laughter, flirtatiousness, and inability to limit information to appropriate audiences. Dr. Labs said Herber would not be able to work in an executive position requiring complex reasoning, multi-tasking, highly developed organizational skills, good social skills, and a consistently rapid pace of work. Admin. R. 816-17.

By December 2010, Herber's psychologist, Alana Raber, Ph.D., noted improved social awareness, ability to inhibit shared information and offensive language, and flexibility in interpersonal situations. Admin. R. 828. On a second neuropsychological evaluation by Dr. Labs,

4 - OPINION AND ORDER

Herber scored in the average, high average, or superior ranges on tests of intellectual functioning, word comprehension, perceptual reasoning, working memory, processing speed, learning and memory, language functioning, motor functioning, and perceptive functioning. Admin. R. 832-36. She showed relative impairment in working memory, rapid visual processing, visual memory, and motor functioning with the nondominant left hand. Admin. R. 37, 837.

The objective findings suggest generally high intellectual function and the clinical observations show improved social functioning. Together they support an adverse inference as to the credibility of Herber's claim that she had not improved and remained incapable of simple, routine tasks with appropriate restrictions on social interactions.

The ALJ found that Herber's activities were inconsistent with the debilitating symptoms she alleged. After December 2010, Herber resided alone and lived independently, planned, organized, and operated her own part time business walking and caring for dogs, took classes to learn how to create a website for her business, participated in exercise and dance classes at a gym, engaged in yoga, swimming, and weight lifting, dated, volunteered in an administrative capacity at the Junior League, served as a mentor for a young girl, sat on a patient advisory board, and traveled extensively, including trips to Arizona, Greece, Turkey, Hawaii, Mexico, Toronto, and New York. She could drive and use public transportation. Admin. R. 37, 69-75, 672. While these activities are not equivalent to full time work, they support a rational inference that Herber's mental health improved and that she had greater ability than she claimed regarding fatigue, memory, decision making, planning, and social functioning. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

In addition, the ALJ properly considered Herber's presentation and demeanor at the hearing, where she was articulate and intelligent and did not display difficulty with memory, mood, or

5 - OPINION AND ORDER

interpersonal interactions. Admin. R. 39. Such observations support an adverse inference as to the credibility of her allegations of debilitating limitations in these functional areas. Social Security Ruling 96-7p, 1996 WL 374186 *5.

The ALJ's credibility finding is sufficiently specific to satisfy me that she did not discredit Herber arbitrarily. The findings are supported by substantial evidence and the reasoning is clear. Accordingly, the credibility finding may not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160; *Smolen*, 80 F.3d at 1281-82.

### III.   Examining Physician's Opinion

As described previously, Dr. Labs administered two rounds of neuropsychological testing during 2010. In her first report, Dr. Labs opined that Herber would be unable to return to her past work or "any executive or managerial position requiring complex reasoning, multi-tasking, highly developed organizational and social skills and work at persistent rapid pace." Admin. R. 817. In her second report, in December 2010, Dr. Labs indicated that there were few changes in the objective findings. The results again showed that Herber had, what Dr. Labs described as "intellectual giftedness." Admin. R. 837. Nonetheless, Dr. Labs opined that, due primarily to impairments in executive function in the areas of self monitoring and social behaviors, Herber had "clearly not yet demonstrated the ability to be productively employed in any capacity and, in my opinion, is fully disabled from any occupation." Admin. R. 837-38.

The ALJ found that Herber was not capable of returning to her past work as a corporate executive, consistent with Dr. Labs's initial opinion that Herber could not perform the functions required for such complex managerial work. She gave little weight to Dr. Labs's opinion that Herber could not be productively employed in any capacity. Admin. R. 38.

An ALJ may discount the opinion of a treating or examining physician by making findings based on substantial evidence and explaining with clear and convincing reasons why the findings support giving the opinion diminished weight. *Molina*, 674 F.3d at 1111; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In discounting Dr. Labs's statement that Herber could not be productively employed, the ALJ correctly said that Dr. Labs was not a vocational expert with the expertise to make such a finding. The disability statement was not a medical opinion within her training and expertise: she did not identify specific functional limitations or work activities Herber could not do. Dr. Labs gave no indication that she was aware of the basic requirements of unskilled simple, routine work, for example. Accordingly, her opinion was not entitled to special significance. 20 C.F.R. § 404.1527(d)(3); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 at *5.

Dr. Labs said a primary barrier to Herber's employability remained "executive function in self monitoring and social behaviors." Admin. R. 837. Dr. Labs conceded, however, that testing was not good at identifying impairments in higher level executive function in intellectually gifted individuals like Herber. Instead, as the ALJ found, Dr. Labs relied on Herber's subjective description of her day to day function to find this limitation. Admin. R. 38, 837. As described previously, the ALJ properly found Herber's subjective statements not fully credible. The ALJ reasonably concluded that Dr. Labs's opinion was no more credible than the subjective statements upon which it was based. An ALJ can properly reject a physician's disability opinion that is premised on the claimant's own subjective reporting which the ALJ properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

For the reasons described in her credibility determination, the ALJ found Herber's activities inconsistent with Dr. Labs's opinion. Admin. R. 37-39. As noted previously, the ALJ properly found Herber's allegations of debilitating fatigue, social inhibition, poor memory, and so forth, inconsistent with her wide ranging activities. Because Dr. Labs premised her opinion in large part on the same subjective complaints, the ALJ properly found her opinion entitled to diminished weight. *Tonapetyan*, 242 F.3d at 1149.

In short, the ALJ discounted Dr. Labs's opinion because it was based on an impairment that was not supported by the testing she administered and required vocational knowledge and expertise she did not possess. Dr. Labs relied extensively on subjective statements that were inconsistent with Herber's activities and less than fully credible. These findings are based on substantial evidence and the reasons are clear and convincing. Accordingly, the ALJ's determination will not be disturbed. *Molina*, 674 F.3d at 1111; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149.

Herber contends the ALJ incorrectly believed Dr. Labs's opinion was contradicted by the opinion of Claudine Moreno, M.D. Admin. R. 38. I agree with Herber that it is unclear whether Dr. Moreno intended to offer an opinion regarding Herber's mental impairments and it is unlikely she intended to contradict Dr. Labs. Admin. R. 1005-7. Even if the ALJ was incorrect in this regard, however, the determination to give Dr. Labs's opinion diminished weight remains amply supported for the reasons discussed above. Accordingly, I find no harmful error. *Carmickle*, 533 F.3d at 1162-63 & n. 4; *Batson*, 359 F.3d at 1197.

Herber also suggests the ALJ should have recontacted Dr. Labs if she found the opinion ambiguous. An ALJ may be required to recontact a medical source when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of evidence. *Mayes v.*

*Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The ALJ did not find an ambiguity or inadequacy

here that would require further development of the record. *Mayes*, 276 F.3d at 459-60; *Tonapetyan*,

242 F.3d at 1150.

### IV.    Post Decision Evidence

The ALJ issued her decision on August 26, 2011. Admin. R. 41. In October 2011, Herber

underwent a sleep study and was diagnosed for the first time with obstructive sleep apnea. Admin.

R. 1010. In November 2011, Herber underwent a third neuropsychological evaluation by Dr. Labs,

which produced "few changes in objective findings." Admin. R. 1029. Herber submitted this

evidence to the Appeals Council in support of her request for review of the ALJ's decision. Admin.

R. 5, 267-70. The Appeals Council denied the request for review, finding that the newly submitted

evidence did not provide a basis to change the ALJ's decision. Admin. R. 1-2.

In this circuit, when the Appeals Council admits evidence into the record after the ALJ's

decision, the newly submitted evidence must be reviewed on appeal to the district court, even if the

Appeals Council declined to review the ALJ's decision and made no findings based on the newly

submitted evidence. The district court must consider the record as a whole, including the newly

submitted evidence, to determine whether the ALJ's decision is supported by substantial evidence.

*Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); *Harman v. Apfel*, 211

F.3d 1172, 1180 (9th Cir. 2000); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

Accordingly, I have reviewed Dr. Labs's third evaluation and find it susceptible to the same

weaknesses the ALJ identified in her decision. Namely, Dr. Labs's opinion remains that Herber

cannot be productively employed, which is a matter that requires vocational expertise that Dr. Labs

does not possess. Such administrative findings are reserved to the Commissioner and cannot be

made by a physician in Dr. Labs's position. 20 C.F.R. § 404.1527(d)(3); SSR 96-5p, 1996 WL 374183 at *5. The ALJ made factual findings as to Herber's functional limitations and properly relied on a vocational expert instead of Dr. Labs to determine whether Herber was disabled within the meaning of the Social Security Act. Indeed, Dr. Labs's lack of sophistication in making such administrative findings is shown by her statement that "there is no objective evidence that [Herber] is able to be employed as a courier or office assistant." Admin. R. 1030. Dr. Labs would improperly shift Herber's burden of proof to the Commissioner. *Mayes*, 276 F.3d at 459.

Consistent with the ALJ's findings with respect to the earlier opinion of Dr. Labs, the newly submitted report again relies heavily on Herber's subjective statements to establish her most debilitating limitations. Admin. R. 1028-29. Dr. Labs reported that Herber's significant limitations in day to day functioning are not reflected in her objective test scores. Admin. R. 1029. Dr. Labs therefore, provided no objective support for her opinion that Herber could not perform any kind of basic work. *See Meanal v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). The newly submitted opinion, therefore, is equally susceptible to the ALJ's determination that Herber's subjective statements are not fully credible and any opinion premised on such unreliable statements is entitled to diminished weight. *Tonapetyan*, 242 F.3d at 1149; *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). The newly submitted evidence provides no basis to change that conclusion. Accordingly, after considering the newly submitted report from Dr. Labs, I conclude that the ALJ's decision remains supported by substantial evidence. *Brewes*, 682 F.3d at 1163.

I find Herber's newly diagnosed sleep apnea irrelevant to determining whether the ALJ's decision is supported by substantial evidence because it does not relate to the period the ALJ considered. Herber did not allege that sleep apnea contributed to her functional limitations at any

10 - OPINION AND ORDER

time during the administrative process before the ALJ and the Appeals Council. The sleep study was done after the ALJ's decision and does not indicate that the diagnosis relates to an earlier time. Admin. R. 1009-11. Furthermore, the sleep study does not identify any functional impairments or work related activities that the condition would preclude. In addition, the sleep study recommended treatment options, which suggests that any symptoms of the condition could be alleviated. Admin. R. 1009-11. Accordingly, after considering the sleep study and diagnosis, I conclude that the ALJ's decision remains supported by substantial evidence. *Brewes*, 682 F.3d at 1163.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this _29th_ day of September, 2014.

Robert E. Jones
United States District Judge